IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

REGINALD D. JONES,            )
                              )
           Plaintiff,         )
                              )
     v.                       )    1:15CV781
                              )
CAROLYN W. COLVIN,            )
Acting Commissioner of Social Security, )
                              )
           Defendant.         )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Reginald Davon Jones ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.   PROCEDURAL HISTORY

Plaintiff protectively filed his applications for Disability Insurance Benefits and Supplemental Security Income on December 15, 2011, alleging a disability onset date of January 1, 2010. (Tr. at 13, 203-12.)[1] After Plaintiff's applications were denied initially (Tr. at 63-82, 116-33) and upon reconsideration (Tr. at 83-110, 135-52), he requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. at 153).

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #8].

On January 14, 2014, Plaintiff, along with his attorney, attended the subsequent hearing, at which an impartial vocational expert testified. (Tr. at 13.) The ALJ ultimately determined that Plaintiff was not disabled within the meaning of the Act (Tr. at 20-21) and, on September 14, 2015, the Appeals Council denied Plaintiff's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80.

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since his alleged onset date. Plaintiff therefore met his burden at step one of the sequential evaluation process. At step two, the ALJ determined that Plaintiff suffered from two severe impairments: degenerative disc disease and degenerative joint disease of the left knee. (Tr. at 15.) The ALJ then found at step three that these impairments did not meet or equal a disability listing. Accordingly, she assessed Plaintiff's RFC and determined that he could perform light work. Specifically, the ALJ found that Plaintiff

> could occasionally lift 20 pounds, frequently lift 10 pounds, stand/walk for six hours in an eight-hour work day, and sit for six hours in an eight-hour workday. Furthermore, the claimant can occasionally [climb] ramps and stairs; and climb ladders, ropes, and scaffolds. In addition, the claimant can occasionally balance, kneel, crouch, and crawl. Further, the claimant should avoid concentrated exposure to hazards.

(Tr. at 16.) At step four, the ALJ determined, based upon the RFC and the testimony of the vocational expert, that Plaintiff remained capable of performing his past relevant work as an

5

examination proctor, secondary school teacher, and teacher aid I. (Tr. at 20.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 20-21.)

In reaching this conclusion, the ALJ noted that in treatment records dated August 29, 2012, Plaintiff "reported that he lifts weights and walks five miles per day." (Tr. at 17.) The ALJ further noted that:

> On June 25, 2013, the Veterans Administration conducted a functional capacity evaluation on the claimant and he reported no flare-ups of pain in his lumbar spine. Further, a physical examination on his left knee reflected that his knee was stable; in addition, the physician reported that [] there was no pain, weakness, fatigability or incoordination that would limit his functional ability. Additionally, on August 7, 2013 when the claimant presented for care he requested a refill of Flexeril and reported that his back was not as bothersome with weight reduction and exercise. His physical examination that same day was unremarkable; in fact, he had a normal range of motion of his spine. The claimant reported that his pain level was at a (4) four and that it had not worsened. He was recommended to continue to exercise as he had lost 25 pounds since January 2012. Notably, treatment providers reported that the claimant was not a surgical candidate. In fact, a consultant from neurosurgery confirmed that the claimant only had mild degenerative changes with no significant nerve pressure; and that surgical treatment would not benefit the claimant.
>
> More recently, treatment records dated January 9, 2014, show that the claimant presented for care complaining of back pain and numbness in his left lower extremity. However, his physical examination showed that he had a normal range of motion in the lumbar spine, no edema, and equal strength bilaterally.

(Tr. at 17-18.) The ALJ determined that based on the evidence presented, Plaintiff was capable of performing work-related activities. (Tr. at 18.) In addition, the ALJ further found that she was "not entirely convinced that the claimant is unable to work because of his impairments as the claimant testified that the main reason he is not teaching now is the poor economy and lack of jobs. In addition, other records show he did not leave the teaching profession due to his impairments. He quit working to care for a relative with Alzheimer's, and [was] providing

6

care for the Aunt he lives with." (Tr. at 18.) In this regard, the Court notes that at the hearing, the ALJ asked Plaintiff what was the "main thing" that was keeping him from going back to teaching, and Plaintiff responded that "the main thing that's keeping me – keeping me from teaching now is that there aren't any teaching jobs" because the state "keep[s] cutting positions . . . they keep cutting teachers and teacher's aides and facilities, and I just don't get it." (Tr. at 53.)

Plaintiff now argues that the ALJ erred in (1) failing to perform a proper listing analysis at step three, (2) finding that he has the RFC to perform a limited range of light work, and (3) failing to give the appropriate weight to the opinion evidence.

    A.    Listings 1.02 and 1.04

At step three of the sequential analysis, the ALJ considers whether any impairment meets or equals one or more of the impairments listed in Appendix I of the regulations. In this case, the ALJ found that Plaintiff's impairments did not meet or equal any of the Listings, and stated that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment." (Tr. at 16.) Plaintiff now claims that the ALJ's failure to explicitly consider the applicability of 20 C.F.R., Part 404, Subpt. P, Appx. 1, §§ 1.02 and 1.04 (hereinafter Listings 1.02 and 1.04) to the facts of Plaintiff's case constitutes error.

In considering Plaintiff's challenge at step three, the Court notes that "[f]or a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not

qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990).[4]  In analyzing the evidence at step three, an ALJ is not required to explicitly identify and discuss every possible listing; she is simply compelled to provide a sufficient explanation and analysis to allow meaningful judicial review of her step three determination.  Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).  Thus, if the "medical record includes a fair amount of evidence" that the claimant's impairment meets a listing, "a full explanation by the ALJ is particularly important."  Id.

In the present case, Plaintiff has not identified "a fair amount of evidence" that his impairments did, in fact, meet or equal all of the specified medical criteria for any of the challenged listings.  With respect to Listing 1.04, Disorders of the Spine, that Listing requires a claimant to meet the requirements of either Part A, Part B, or Part C.  Here, it appears in this case that Plaintiff contends that he meets Part C.  To meet Listing 1.04(C), a claimant must demonstrate a disorder of the spine, such as degenerative disc disease, resulting in compromise of the nerve root with "[l]umbar spinal stenosis resulting in pseudoclaudication,[5] established by findings on appropriate medically acceptable imaging, manifested by chronic

---

[4] "The Secretary explicitly has set the medical criteria defining the listed impairments at a higher level of severity than the statutory standard. The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just 'substantial gainful activity.' See 20 CFR § 416.925(a) (1989) (purpose of listings is to describe impairments 'severe enough to prevent a person from doing any gainful activity'); SSR 83–19, at 90 (listings define 'medical conditions which ordinarily prevent an individual from engaging in any gainful activity'). The reason for this difference between the listings' level of severity and the statutory standard is that, for adults, the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary. That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work." Sullivan v. Zebley, 493 U.S. at 532.

[5] Pseudoclaudication occurs when the narrowing of the lumbar spinal canal puts pressure on spinal root nerves, causing pain, discomfort, numbness, and weakness in the lower extremities with walking or prolonged standing.  Pseudoclaudication pain is usually relieved by sitting or lying down.  See Spinal Stenosis: Expert Answers, Mayo Clinic, http://www.mayoclinic.org/diseases-conditions/spinal-stenosis/expert-answers/pseudoclaudication/faq-20057779 (last updated April 15, 2014).

nonradicular pain and weakness, and <u>resulting in inability to ambulate effectively</u>, as defined in 1.00B2b." 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.04(C). Similarly, to meet Listing 1.02, Major Dysfunction of a Joint, an impairment of the lower extremities is analyzed under 1.02(A), which requires a claimant to show dysfunction of a major, weight-bearing joint such as the knee, characterized by gross anatomical deformity and chronic joint pain and stiffness, with signs of limitation of motion or other abnormal motion of the joint, with medical imaging showing joint space narrowing, bony destruction, or ankylosis, and "<u>resulting in inability to ambulate effectively</u>, as defined in 1.00B2b." 20 C.F.R., Part 404, Subpt. P, Appx. 1, § 1.02(A).

Significantly, in the present case, nothing in the record indicates that Plaintiff's knee or back impairments resulted in "inability to ambulate effectively, as defined in 1.00B2b," which is a key requirement of both Listing 1.02(A) and 1.04(C). 20 C.F.R., Part 404, Subpt. P, Appx. 1, §§ 1.02(A) and 1.04(C). For purposes of both listings, Section 1.00B2b(1) defines the inability to ambulate effectively as

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 1.00B2b(1). Section 1.00B2b(2) then goes on to provide "examples of ineffective ambulation," which

> include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation; the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 1.00B2b(2).

Plaintiff now contends that consultative examiner Dr. M.A. Samia "documented that it appeared that plaintiff required an assistive device for ambulation or balancing." (Pl.'s Br. [Doc. 12] at 7) (citing Tr. at 627-28). However, Plaintiff presents no evidence that he ever used such a device. In fact, at the same consultation, Plaintiff reported to Dr. Samia that he could "take a walk," "walk without assistance," and "walk a block." (Tr. at 626.) Moreover, at an appointment with his primary care provider just two months later, on August 29, 2012, Plaintiff related that he lifts weights and "walks five miles a day." (Tr. at 17, 688.) A year later, on August 7, 2013, he reported that he "walks one mile and lift[s] some weights." (Tr. at 704.) In considering the evidence in this case, the ALJ specifically noted Plaintiff's reported ability to walk five miles. (Tr. at 17.) At the hearing before the ALJ, Plaintiff confirmed that he did not use even a single cane, and further noted that if he felt that he could not keep his balance, he would let his doctor give him a cane at his next appointment. (Tr. at 46.) Thus, there is simply no evidence that Plaintiff had an inability to ambulate effectively under the applicable standard. Therefore, the ALJ did not err in failing to explicitly discuss Listings 1.02(A) and 1.04(C).

Plaintiff may also be contending that he meets Part A of Listing 1.04, but this contention is similarly unpersuasive. To meet Listing 1.04(A), a claimant must show "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R., Pt. 404, Subpt. P,

Appx. 1, § 1.04(A). Here, however, Plaintiff identifies no evidence, let alone "a fair amount of evidence," documenting objective motor loss, atrophy, and muscle weakness. In short, the medical record lacked sufficient evidence to trigger further consideration of Listing 1.04(A) under Radford. Substantial evidence therefore supports the ALJ's step three determination. See also Mills v. Colvin, No. 5:13-CV-432-FL, 2014 WL 4055818, at *5 (E.D.N.C. Aug. 14, 2014) ("In this case ... where there is no such probative evidence suggesting that plaintiff meets or equals Listing 1.02 or Listing 1.04, the ALJ was not required to engage in a full explanation of such listings."); McCauley v. Colvin, No. 1:13CV534, 2016 WL 3566659, at *7 (M.D.N.C. June 24, 2016) ("Plaintiff has failed to bring forth any evidence supportive of this claim that he equaled or met all the requirements of Listing 1.02A. Therefore, the ALJ's lack of discussion regarding Listing 1.02A does not warrant remand.") (citation omitted).

B.  Opinion Evidence

In an alternative argument, Plaintiff contends that the ALJ failed to give proper weight to the opinion evidence provided by Dr. Samia and Ms. Lungelow. In the case of Dr. Samia, the consultative examiner who assessed Plaintiff on June 27, 2012, the ALJ gave great weight to his assessment, finding it consistent with the record as a whole. Nevertheless, Plaintiff now contends that the ALJ erred in failing to address Dr. Samia's statement that "[i]t does appear an assistive device is needed for ambulation or balance at this particular time." (Pl.'s Br. at 11-12; Tr. at 627-28.) However, as previously noted, Plaintiff presented no evidence that he has used a cane, and Plaintiff reported extensive walking abilities shortly after Dr. Samia's one-time examination. (See Tr. at 17, 688.) In addition, as further recounted by the ALJ, Dr. Samia himself noted that Plaintiff had no difficulty moving about during the exam (Tr. at 19,

11

627), and when opining about the need for an assistive device, Dr. Samia added, "I would defer to treating orthopedist regarding degree of impairment and long-term prognosis" (Tr. at 628). Given the qualified nature of Dr. Samia's recommendation, and having noted Plaintiff's documented ability to walk without assistance, the ALJ properly omitted the need for an assistive device from Plaintiff's RFC.

With regard to Ms. Lungelow's opinion, Plaintiff contends that the ALJ assigned it limited weight because "she was unable to determine the author[,] and it was filled out incorrectly." (Pl.'s Br. at 10.) Plaintiff therefore argues that the ALJ was required to recontact Ms. Lungelow for clarification under 20 C.F.R. § 404.1512(e). However, as the Commissioner correctly notes, the requirement that an adjudicator recontact a treating physician was removed from the Social Security regulations two years before the ALJ issued her decision in this case. (Def.'s Br. [Doc. #14] at 14) (citing 77 Fed. Reg. 10651, 2011 WL 7404303 (Feb. 23, 2012).) In removing this provision, the agency specifically noted that, "[d]epending on the nature of the inconsistency or insufficiency, there may be other, more appropriate sources from whom we could obtain the information we need," including the other medical evidence and consultative examinations.

Here, Ms. Lungelow's failure to legibly provide her name on any of the forms in question made it nearly impossible for the ALJ to discern whether she even qualified as a treating source, let alone the degree to which her opinions were entitled to deference under the criteria set out in 20 C.F.R. § 404.1527(c).[6] Moreover, the ALJ ultimately discounted Ms.

---

[6] Indeed, to the extent Plaintiff contends that the ALJ erred by failing to give Ms. Lungelow's statement controlling weight as a treating source medical opinion, the Court notes that Ms. Lungelow is a Physician's Assistant who is not considered an acceptable medical source for providing a treating source medical opinion.

12

Lungelow's opinions in light of the flaws highlighted by the ALJ in the opinion itself. Significantly, although the ALJ did note Ms. Lungelow's failure to correctly fill out Plaintiff's disability forms, the ALJ further explains that this failure consisted of more than clerical errors. The ALJ explicitly assigned limited weight because Ms. Lungelow circled form limitations as to standing, walking, lifting, stopping, and balancing without any narrative explaining the underlying basis for the opined restrictions. (Tr. at 19.) This explanation sufficiently makes clear the ALJ's reasons for the weight assigned. See SSR 96-2p, 1996 WL 374188, at *5.

C.  RFC

As a final matter, Plaintiff contends that, even if his back and knee impairments fail to meet Listings 1.02 and 1.04, the severity of his knee and back pain, "along with his tinnitus that affects his ability to focus and concentrate," would prevent him from working at any exertional level, including the light work identified by the ALJ. (Pl.'s Br. at 7-9.) Although Plaintiff relies heavily on his "credible testimony" in making this argument (Pl.'s Br. at 8), the ALJ specifically found that "the record does not support such functional limitations as alleged by the claimant," and Plaintiff does not challenge this adverse credibility finding (Tr. at 17). The only additional evidence Plaintiff offers to connect his back and knee impairments with limitations beyond those in the RFC comes in the form of opinion evidence from Ms. Lungelow, P.A. Because, as discussed above, the ALJ did not err in weighing this opinion, substantial evidence supports the assessed RFC.

---

See 20 C.F.R. § 404.1527, § 404.1502, § 404.1513(a) and (d); SSR 96-2p; SSR 06-03p ("[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight," and noting that "[m]edical sources who are not 'acceptable medical sources,' [include] nurse practitioners [and] physician assistants."). Ms. Lungelow's opinion must still be considered and weighed, which the ALJ did here in finding an insufficient basis and explanation to support the opinion.

13

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #11] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #13] be GRANTED, and that this action be DISMISSED with prejudice.

This the 22nd day of August, 2016.

/s/ Joi Elizabeth Peake
United States Magistrate Judge